**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at COVINGTON**

**CIVIL ACTION NO. 07-99-DLB**

**KRAUSS-MAFFEI CORPORATION**                                                          **PLAINTIFF**

**vs.**                          **MEMORANDUM OPINION AND ORDER**

**TIMOTHY DONOVAN**                                                                        **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the court on Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue (Doc. #6).  Plaintiff has filed a response in opposition (Doc. #10), and Defendant has filed a reply (Doc #11).  For the reasons that follow, the motion is hereby **denied**.

> **I.      Introduction**

Plaintiff former employer alleges breach of contract, violation of the Uniform Trade Secrets Act, and breach of the common law duties not to disclose confidential information against Defendant former employee.  Defendant removed this matter to this Court from the Boone County Circuit Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

> **II.     Background**

Plaintiff is a Delaware corporation with its headquarters in Florence, Kentucky.[1] Defendant resides in Redford, Michigan.  Plaintiff employed Defendant as the Regional

---

[1] In fact, Plaintiff's corporate operations are based entirely in Florence, Kentucky. (Doc. #10-3 at 1).

1

Sales Manager for its Reaction Process Machinery Division from November 2001 to October 2006.  An employment agreement, executed on November 15, 2001, governed the parties' relationship. (Doc. #1-2 at 9-10).  After voluntarily resigning from his employment with Plaintiff, Defendant began working for Frimo.   Plaintiff alleges that Defendant's employment with Frimo has led to the violation of the parties' employment agreement.[2]

Plaintiff's complaint provides:

> On information and belief, Defendant has disclosed and/or used trade secrets and confidential and proprietary information of Krauss-Maffei in his work for Frimo, and that work is so similar to the work he performed for Krauss-Maffei that he will necessarily and inevitably use and disclose trade secrets and confidential and proprietary information of Krauss-Maffei in the future.

(Compl. at ¶12).

While Plaintiff alleges breach of contract, violation of Kentucky's Uniform Trade Secrets Act, and breach of the common law duties not to disclose confidential information, Plaintiff does not identify any particular actions by Defendant as the basis for its allegations.

---

[2] Specifically, Plaintiff cites the portion of the employment agreement which provides that employees "will be bound to secrecy on all [Krauss-Maffei] business affairs" and that "[n]o information of a confidential or non-confidential nature can be passed on to 3rd parties without prior approval." (Compl. at ¶ 8; Doc. #1-2 at 9).  Additionally, Plaintiff points out that the employment agreement explicitly incorporated its Employee Handbook. (Compl. at ¶8; Doc. #1-2 at 9). Regarding trade secrets, the Handbook provides:

> Employees agree not to communicate or disclose to any person(s), either directly or indirectly, or under any circumstances at any time, any knowledge of information whatsoever acquired by him/her during the period of employment, relating to or concerning [Krauss-Maffei's] inventions, trade secrets, written materials as described below, or any other confidential information regarding the property, or business affairs of [Krauss-Maffei] or any of its subsidiaries without the written permission of [Krauss-Maffei].
> Employees agree not to utilize or make available any such knowledge or information, either directly or indirectly, in connection with the solicitation of or the acceptance of employment with any competitor of [Krauss-Maffei].

(Compl. at ¶8; Doc. #1-2 at 12).

Defendant moves to dismiss this action for lack of personal jurisdiction and improper venue. Plaintiff argues that the exercise of personal jurisdiction is appropriate and that venue is proper in this Court.  Additionally, Plaintiff argues that Defendant has waived his right to contest personal jurisdiction because he has responded to Rule 36 discovery requests.

### III.     Standard of Review

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  In assessing whether that burden has been satisfied, a district court has three procedural alternatives: "the court may determine the motion on the basis of the affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  If an evidentiary hearing on the motion is not held, as is the case here, the Sixth Circuit has provided:

> [T]he court must consider the pleadings and affidavits in a light most favorable to the plaintiff...To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.
>
> Furthermore, a court...does not weigh the controverting assertions of the party seeking dismissal...

*Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

### IV.     Analysis

### A.     Personal Jurisdiction

"[A] federal court must apply the law of the state in which it sits, subject to constitutional limitations" in determining whether personal jurisdiction exists.  *Reynolds v.*

3

*International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir. 1994) (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). "When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (citing *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997)). Thus, for the court to exercise personal jurisdiction, "the defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds*, 23 F.3d at 1115 (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972), *overruled on other grounds by Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)). However, "when a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court 'need only determine whether the assertion of personal jurisdiction...violates constitutional due process.'" *Aristech Chemical*, 138 F.3d at 627 (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996)). Because Kentucky has construed its long-arm statute to extend as far as the Due Process Clause, this single inquiry is all that needs to be addressed. *Id.* (citing *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992)).

To exercise personal jurisdiction over a nonresident defendant without violating due process, the defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). "Depending on the type of minimum contacts in a case, personal jurisdiction can be either general or specific." *Reynolds*, 23 F.3d 1110 at 1116 (citing *Third*

4

*Nat'l Bank v. Wedge Group Incorporated*, 882 F.2d 1087, 1089 (6th Cir. 1989)).  General jurisdiction applies when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims."  *Kerry Steel*, 106 F.3d at 149.  Specific jurisdiction, on the other hand, "exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum."  *Id* (internal quotation omitted).  In this case, specific jurisdiction is at issue, as Plaintiff does not appear to argue that Defendant's contacts with Kentucky are so pervasive as to warrant general jurisdiction.[3]

The Sixth Circuit has adopted a three-part test for determining whether specific jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  This test, however, is not a mechanical one.  A court applying this test is required to "consider the jurisdictional facts of each case individually, to make judgments as to the substantiality of contacts with the forum state and the fairness and justice of subjecting a specific

---

[3] Even if Plaintiff explicitly argued that general, as well as specific, jurisdiction exists over Defendant, that argument would fail, as the record fails to indicate that Defendant engaged in the type of "continuous and systematic" contacts with Kentucky sufficient to warrant the exercise of general jurisdiction.

defendant to the in personam jurisdiction of the forum state." *In-Flight Devices*, 466 F.2d at 225-26.

### 1.    Purposeful Availment

In determining whether a nonresident defendant has purposefully availed himself of the benefits and protections of the forum state for purposes of personal jurisdiction, no single factor is dispositive. *See Gateway Press, Inc. v. Leejay, Inc.*, 993 F. Supp. 578, 581 (W.D. Ky. 1997). "Rather, the Court's conclusion will emerge from a careful evaluation of all of the facts and circumstances of the parties' business relationship taken as a whole." *Id.* For the purposeful availment requirement to be satisfied, the Defendant's contacts with the forum state must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original). The purposeful availment prong also requires that the defendant "should reasonably anticipate being haled into court" in the forum state based on his or her connections to the forum, *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *LAK , Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (citing *Burger King*, 471 U.S. at 475). The Sixth Circuit has provided:

> There is a difference between what *World-Wide Volkswagen* calls a mere "collateral relation to the forum State," and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws"
>
> ...The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are

6

subject to regulation and sanctions in the other State for the consequences of their activities."

*Id.* (citing *World-Wide Volkswagen*, 444 U.S. at 299; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King*, 471 U.S. at 473).

In this case, Plaintiff offers several examples of contacts between Defendant and Kentucky. Defendant was employed by Plaintiff, a company headquartered in Kentucky.[4] Defendant was physically present in Kentucky on several occasions in connection with his employment for sales meetings and customer visits. Defendant depended upon staff at Kentucky headquarters to perform administrative functions. Expense reports and telephone records evidence continuous contact between Defendant and Kentucky. Customer quotes, order confirmations, billings, confidential information, and trade secrets were processed through or obtained from Kentucky headquarters. Moreover, the governing employment agreement contained a Kentucky choice-of-law provision.

The Supreme Court has held that "a contract with an out-of-state party, standing alone, is not sufficient to establish minimum contacts." *Reynolds*, 23 F.3d at 1118 (citing *Burger King*, 471 U.S. at 478). However, the existence of such a contract is relevant. For a personal jurisdiction determination in the context of an employment contract dispute, "matters such as contract negotiations, contemplated future consequences of the employment agreement, the terms of the employment contract and the parties' course of

---

[4] In *Southern Machine*, 401 F.2d at 383, the Sixth Circuit considered the fact that "Mohasco dealt directly with a Tennessee corporation whose only manufacturing plant was located in Chattanooga." Similarly, in this case, Plaintiff's corporate operations are based entirely in Florence, Kentucky. (Doc. #10-3 at 1).

dealing will be considered." *United Radio, Inc. v. Wagner*, 448 F. Supp. 2d 839, 841 (E.D. Ky. 2006) (citing *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 982 (6th Cir. 1992)).

Thus, the choice-of-law provision contained in the parties' agreement is relevant to the personal jurisdiction issue. *See LAK*, 885 F.2d at 1295 (citing *Burger King*, 471 U.S. at 481). Though standing alone not determinative, a choice-of-law provision "supports the inference" that Defendant intended to avail himself of the benefits and protections of Kentucky law. *Gateway Press*, 993 F. Supp. at 581. Having elected to invoke the benefits of Kentucky law for resolving disputes under the contract, "there is obviously much to be said in favor of letting such disputes be resolved in [that state]." *LAK,* 885 F.2d at 1295.

In *United Radio*, 448 F. Supp. 2d at 840, a case with facts very similar to the ones now before the Court, a Kentucky corporation ("BlueStar") brought suit against its employee ("Wagner"), a resident of Michigan, for breach of employment contract, misappropriation of trade secrets, and tortious interference with contractual relations. Defendant employee moved to dismiss for lack of personal jurisdiction. *Id.* The parties entered into an employment contract whereby Wagner agreed to be based at BlueStar's divisional office in Michigan. *Id.* at 840-41. BlueStar executed the employment contract in Michigan. *Id.* at 841. The contract included non-compete and non-disclosure of trade secrets provisions. *Id.*[5] It also included a choice-of-law clause, which provided that Kentucky law would govern any disputes arising under the contract. *Id.* The agreement did not include a forum selection clause. *Id.*

---

[5] The agreement between the parties in the instant action did not include a non-compete clause.

The contacts between the parties in *United Radio* were similar to those found in this case. While Wagner resided in Michigan during his employment, he maintained various connections with the home office in Kentucky. He made frequent visits (at least thirteen) to the Kentucky office both to give and receive technical training. *Id.* He maintained "continuous e-mail and telephone contact with the home office during his employment seeking technical input in the performance of his duties and other matters." *Id.* Additionally, he signed contracts for BlueStar in Kentucky, and his orders for sales made in Michigan were processed through the Kentucky office. *Id.*

Ultimately, Judge Bertelsman determined that personal jurisdiction existed over Wagner. *Id.* The Court reasoned that, while his continuous contacts with the home office during his employment "alone make for a close call," the balance is "tipped by the choice of law clause." *Id.* Judge Bertelsman provided:

> Wagner's business relationship with BlueStar in Kentucky lasted two years, during which time he had substantial business contact with BlueStar employees, earned a salary paid in Kentucky, signed a contract governed by Kentucky law, bound BlueStar to goods and services in Kentucky, and trained BlueStar employees in Kentucky. These actions can hardly be categorized as random or fortuitous, and thus Wagner has purposefully availed himself of the privilege of acting or causing consequence in Kentucky.

*Id.* at 842.

However, in the factually similar case of *Calphalon Corporation v. Rowlette*, 228 F.3d 718, 720 (6th Cir. 2000), the Sixth Circuit determined that it would be improper to impose personal jurisdiction on a manufacturer's ("Calphalon") exclusive representative ("Rowlette")[6] in the states of Minnesota, Iowa, North Dakota, South Dakota, and Nebraska.

---

[6] Rowlette and Associates was the name of the corporation, and Jerry Rowlette was the name of the shareholder, director, and president of said corporation. I collectively refer to these

From 1980 to 1996, a "letter agreement controlled the arrangement between the parties, and, in both 1996 and 1997, Rowlette executed a one-year manufacturer's representative agreement. *Id.* The agreement specified, in part, that Rowlette would promote Calphalon's products, keep Calphalon informed of market conditions, and develop sales plans for customers. *Id.* In addition, the agreement included a choice-of-law provision, providing that it would be "interpreted under the laws of the State of Ohio." *Id.* During the course of the parties' arrangement, Rowlette corresponded with Calphalon in Ohio via telephone, fax, and mail. *Id.* Rowlette made two physical visits to Ohio – one for a mandatory sales meeting and another to accompany a client on a tour of the Calphalon facilities. *Id.* Upon learning that Calphalon did not intend to renew the agreement, Rowlette notified Calphalon of its claims for breach of contract and unpaid commissions. *Id.* at 720-21. Calphalon then filed suit in the United States District Court for the Northern District of Ohio, seeking a declaratory judgment. *Id.* at 721. Rowlette filed a special appearance in the Ohio federal case, moving for dismissal for lack of personal jurisdiction. *Id.* The District Court granted the motion to dismiss, and the Sixth Circuit affirmed.

In determining that the exercise of personal jurisdiction over Rowlette would be inappropriate, the Sixth Circuit emphasized the insufficiency of Rowlette's contacts with Ohio. The Court stated that "the mere existence of a contract...for seventeen months is insufficient to confer personal jurisdiction" and noted that the "*quality* rather than the *quantity* of the contacts is the proper subject of review." *Id.* at 722 (emphasis in original).

---

two parties as "Rowlette" for ease of reference.

The Court highlighted the fact that the parties' association "centered" on Rowlette's representation of Calphalon outside Ohio.  *Id.* at 723.  The Sixth Circuit provided:

> Rowlette's performance of the agreement was not focused on exploiting any market...in the state of Ohio.  Moreover, Rowlette's phone, mail, and fax contact with Calphalon in Ohio and [Rowlette's] physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there.  Arguably, Rowlette would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operation.  Thus, Rowlette's contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction.

*Id* (internal citation omitted).[7]  The Court added that even though the choice-of-law provision put Rowlette "on notice that the contract was to be governed by Ohio law, it did not make a deliberate affiliation with that state nor could it reasonably foresee possible litigation there."  *Id.*[8]

Although *United Radio* and *Calphalon* represent two very different outcomes under similar facts, because Defendant herein chose to enter into an employment agreement that contemplated the continuing contact with the corporation's headquarters in Florence, Kentucky, it is difficult  to accept that his involvement with the forum was not free and

---

[7] In Judge Hillman's (District Judge) dissenting opinion, he criticizes the majority as "broaden[ing] the notion of 'fortuitous' contacts so as to expand the concept beyond all recognition." *Calphalon Corp.*, 228 F.3d at 724.  He also compares the court's analysis to that of *Pennoyer v. Neff*, 95 U.S. 714 (1877), *overruled by International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  *Id.* at 724-25.

[8] It should be noted, however, that in *United Radio*, 448 F. Supp. 2d at 843, Judge Bertelsman reached the opposite conclusion.  Finding that "the balance is tilted toward finding personal jurisdiction by the choice-of-law clause," Judge Bertelsman provided that "[a] choice of law provision 'though alone insufficient to establish jurisdiction, can reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" *Id* (citing *Calphalon Corp.*, 228 F.3d at 723).  Note that Judge Bertelsman actually cites to *Calphalon* in support of this position.

intentional. Moreover, Defendant's relationship to Kentucky cannot not be described as merely "passive," as Defendant has traveled to Kentucky for employment purposes and depended on Kentucky headquarters for administrative support. *See Hillerich & Bradsby Co. v. Hall*, 147 F. Supp. 2d 672, 677 (W.D. Ky. 2001). Based on a consideration of the facts of this case, the Court finds that this case is more similar to *United Radio* than to *Calphalon* and will adopt the reasoning and rationale of Judge Bertelsman.

  **2. Causes of Action Arising from Defendant's In-state Activities**

  The second prong of the *Southern Machine* test states that "the cause of action must arise from the defendant's activities" in the forum. *Southern Machine*, 401 F.2d at 381. The "arising from" requirement under this prong is fulfilled "when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp.*, 228 F.3d at 723 (citing *Southern Machine*, 401 F.2d at 384). In the context of claims arising from contractual disputes, the Sixth Circuit has stated that "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Southern Machine*, 401 F.2d at 384 n.29.[9] "The activities do not have to directly result in the cause of action, they must only 'have a substantial connection with the defendant's in-state activities.'" *United Radio*, 448 F. Supp. 2d at 842 (citing *Southern Machine*, 401 F.2d at 384 n.27). "For example, in an action for breach of contract, it necessarily follows that the cause of action arises directly out of the contract entered into by the plaintiff and the nonresident defendant." *Auto*

---

  [9] Defendant argues that the Court cannot make this determination, since Plaintiff has provided no operative facts. The Defendant's position is that Plaintiff has made unsupported allegations, failing to provide the operative facts necessary to decide whether the causes of action actually arise from the Defendant's contacts with the forum state.

*Channel, Inc. v. Speedvision Network*, 995 F. Supp. 761, 766 (W.D. Ky. 1997) (citing *In-Flight Devices*, 466 F.2d at 229 (concluding that contract entered into by nonresident defendant "is necessarily the very soil from which the action for breach grew")).

In *United Radio*, 448 F. Supp. 2d at 842, Judge Bertelsman emphasized that the causes of action in that case all turned on the defendant's alleged breach of his employment contract. Due to the similarities between *United Radio* and the instant action, Judge Bertelsman's analysis once again proves instructive. The Court provided:

> Though the actual employment contract was signed in Michigan, "the place where the contractual obligation was incurred is a factor that courts often deem important, although it cannot normally be determinative." Wagner's interactions with BlueStar employees in Kentucky provided him with the business relationships and trade secrets that are the basis of his alleged breach...Thus, this requirement of specific jurisdiction is satisfied.

*Id*. at 842-43. In this case, the causes of action, all relating to the employment contract, have a "substantial connection" with the Defendant's in-state activities. *Id*. at 842 (citing *Southern Machine*, 401 F.2d at 384 n.27).

### 3. Reasonableness of Exercise of Personal Jurisdiction

The Sixth Circuit has commented that "once the first two questions have been answered affirmatively, resolution of the third involves merely ferreting out the unusual cases where that interest cannot be found." *Southern Machine*, 401 F.2d at 384.

In *United Radio*, 448 F. Supp. 2d at 843, Judge Bertelsman found this final prong satisfied by virtue of the "lengthy" relationship between Wagner and BlueStar,[10] emphasizing that Wagner had hoped to profit financially from his employment with

___

[10] In *United Radio*, 448 F. Supp. 2d at 842, the relationship between BlueStar and Wagner lasted two years. In the instant action, the relationship between Plaintiff and Defendant lasted five years.

13

BlueStar.  Given the parties' five-year relationship and the choice-of-law provision in the contract, Defendant could reasonably foresee being haled into a Kentucky court.  When examined as a whole, the parties' relationship evidences continuous and purposeful contacts.  Furthermore, Defendant's contacts with the forum state were not created by Plaintiff's "unilateral activity."  *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417 (1984).  Rather, the contacts in this case represent actions by the defendant "purposefully directed toward the forum State."  *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987).  Put simply, it is hard to believe Defendant did not reasonably foresee that he might be haled into Kentucky Court based on the employment arrangement contemplated in the parties' agreement and the choice-of-law provision therein.

**B.     Venue**

Venue in removal actions is governed by 28 U.S.C. § 1441(a).  *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953).  In *Kerobo v. Southwestern Clean Fuels*, 285 F.3d 531, 535 (6th Cir. 2002), the Sixth Circuit held that where a case is properly removed from state court to the federal court that embraces that area pursuant to 28 U.S.C. § 1441(a), a motion to dismiss for improper venue will not lie.  At least one lower court within the Sixth Circuit has interpreted *Kerobo* to mean that any time a case is properly removed from a state court to a federal court, venue is "unassailable."  *See Tumbleweed, Inc. v. American Feed, Inc.*, 2003 WL 1145471, at *1 (W.D. Ky. 2003) ("[W]hile venue may have arguably been improper in the state court, our venue on removal is unassailable.").  Thus, to the extent that Defendant is arguing that venue is inappropriate from a substantive standpoint pursuant to 28 U.S.C. § 1391, his argument fails.

14

Defendant argues that venue in this Court is improper because all of the alleged misconduct occurred outside Kentucky.  Defendant cites no case law in support of this position, and, as was discussed in the previous section, the alleged misconduct arose from the parties' employment contract and Defendant's continuous contact with a corporation headquartered in Kentucky.

### C. Waiver

As the Court has determined that personal jurisdiction is appropriate under *Southern Machine*, the Court need not address Plaintiff's argument that Defendant waived its right to contest personal jurisdiction by responding to discovery requests.

### V.    Conclusion

Plaintiff has established a *prima facie* case that the exercise of personal jurisdiction over him comports with due process requirements.  Sufficient minimum contacts exist between Defendant and Kentucky as to warrant the exercise of personal jurisdiction.  The causes of action arise from Defendant's contacts with Kentucky, and it is not unreasonable to hail Defendant into court in Kentucky.  Venue is proper, since this case was properly removed from state court to federal court pursuant to 28 U.S.C. § 1441(a).

For the reasons stated herein, **IT IS ORDERED THAT –**

(1)    Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue (Doc. #6) be, and hereby is, **DENIED**.

(2)    Defendant shall file his answer **within 20 DAYS** of this Memorandum Opinion and Order.

(3)     To the extent not already completed, the parties shall conduct their Rule 26

conference and file their Rule 26(f) Report of Planning Meeting **not later**

**than January 29, 2008**.

This 9th day of January, 2008.



Signed By:

_David L. Bunning_   _DB_

**United States District Judge**

G:\DATA\Opinions\2-07-99-Krauss-Maffei-MOO.wpd

16